IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00955-WYD-CBS

SECURITY SERVICE FEDERAL CREDIT UNION,

     Plaintiff,

v.

FIRST AMERICAN MORTGAGE FUNDING, LLC, et al.

     Defendants.

---

FIRST AMERICAN MORTGAGE FUNDING, LLC,

     Third-Party Plaintiff,

v.

STEWART TITLE OF CALIFORNIA, INC., et al.

     Third-Party Defendants.

---

FIRST AMERICAN MORTGAGE FUNDING, LLC, et al.

     Cross-claim Plaintiffs,

v.

KENNETH E. NORTH, et al.

     Cross-claim Defendants.

FIRST AMERICAN MORTGAGE FUNDING, LLC, et al.

     Counterclaim Plaintiffs,

v.

SECURITY SERVICE FEDERAL CREDIT UNION,

     Counterclaim Defendant.

**ORDER**

This matter is before the Court on the following three motions: (1) Defendant Orange Coast Title Company of Southern California's (OCT) Motion for Hearing/Conference re Choice of Law [ECF No. 690], filed August 12, 2011; (2) Defendant Stewart Title of California, Inc.'s (STC) Motion for Determination of Applicable Law [ECF No. 691], filed August 15, 2011; and (3) Defendant Lawyers Title Company's (LTC) Motion for Determination of Law on Choice of Law [ECF No. 692], filed August 17, 2011.   In their motions, OCT, STC, and LTC, collectively the "Closing Agents," all contend that California law, not Colorado law, should be applied to the claims alleged against them in Plaintiff Security Service Federal Credit Union's (SSFCU) Fourth Amended Complaint, [ECF No. 687] filed July 18, 2011, and to the privileges that SSFCU has invoked during discovery in this case.   SSFCU filed its Consolidated Response, [ECF No. 699], on September 16, 2011 and the Closing Agents filed their corresponding replies on October 7, 2011, [ECF Nos. 708, 709, 710].

**I.      Background**

By way of background, SSFCU is the successor in interest to New Horizons Community Credit Union (New Horizons), a now-defunct Colorado credit union.   OCT, STC, and LTC are all California title companies that conduct escrow for real property transactions in the state of California.   New Horizons entered into a funding service agreement with First American Mortgage, Inc. (FAM) whereby FAM on behalf of New Horizons would perform a number of services related to construction loans that New Horizons would fund.   FAM in turn, contracted with the Closing Agents to perform escrow

services related to the closings of the construction loans on various properties located in California.

The claims against the Closing Agents arise out of the Closing Agents' handling of the escrow transactions relating to the construction loans, initially funded by New Horizons.   New Horizons made the loans to finance the purchase of real property in California and secured repayment of these loans with deeds of trust on the properties. The deeds of trust were recorded under California law and each instrument also provides that it is governed in accordance with California law.   These loans were ultimately discovered to be part of a straw borrower scheme, alleged to have been perpetrated by a separate party in this matter.   Consequently, the borrowers never repaid any money in connection with their respective loans and the loans went into default.   SSFCU eventually utilized California's non-judicial foreclosure framework under Cal. Civil Code § 2924 *et seq.* and purchased all the borrowers' properties related to the New Horizons loans using full credit bids.

In its Fourth Amended Complaint, [ECF No. 687], SSFCU has asserted claims for breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty, and various other tort claims against the Closing Agents in connection with alleged breach of escrow instructions related to the loan closings for the California properties.   Fourth Amended Complaint at ¶ 153-85 [ECF No. 687], filed July 18, 2011.   During discovery, Defendants OCT and STC filed motions to compel documents withheld by SSFCU pursuant to Colorado's Compliance Review Committee Privilege, Colo. Rev. Stat. Ann. § 11-71-101 through 103 (West 2011).   *See* Defendant OCT's Motion to Compel Documents, [ECF No. 630], filed May 6, 2011 and Defendant STC's Motion to Compel

Plaintiff to Produce Documents Withheld Under Privilege, [ECF No. 637], filed May 6,

2011.   This Colorado privilege protects documents prepared for or created by a

compliance review committee from discovery in a civil action.   § 11-71-103(2).   There is

no corresponding privilege that exists in California.   These motions were referred by

memorandum [ECF No. 638] to United States Magistrate Judge Craig B. Shaffer.

      In their motions to compel, OCT and STC both asserted that California law, rather

than Colorado law, should apply to the underlying substantive claims and that California

also supplies the applicable law of privilege.   *See e.g.* OCT's Motion to Compel

Documents [ECF No. 630] at 22.   In light of the choice of law issue raised in the motion to

compel, U.S. Magistrate Judge Shaffer ordered the Defendants to file motions addressing

choice of law and stayed discovery while these motions were pending, except as to STC.

Minute Entry for Telephonic Status Conference, [ECF No. 683], filed July 6, 2011.   The

Closing Agents subsequently filed the choice of law motions at issue in this order.

## II.   <u>Judicial Estoppel</u>

      As a preliminary matter, SSFCU argues the Closing Agents should be estopped

from invoking California law because they relied on Colorado law in prior motions filed

over the course of the last two years.   Specifically, SSFCU notes that the Closing Agents

asserted Colorado's Economic Loss Rule as a defense to SSFCU's then-Third Amended

Complaint and to Third Party Defendant FAM's claim for negligence.   *See* STC's Motion

to Dismiss Third-Party Plaintiff's Claims, [ECF No. 183], filed July 27, 2009; OCT's Motion

to Dismiss Third Party Claims, [ECF No. 181], filed July 27, 2011; LTC's Motion to Strike

or in the Alternative to Sever and Bifurcate Third Party Claims, [ECF No. 182], filed July

27, 2011.   Colorado's Economic Loss Rule prevents a party who suffers only economic

loss from the breach of a contractual duty from asserting a tort claim for such a breach, absent an independent duty of care under tort law. *See Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo. 2000). Although the Closing Agents raised this argument in their motions referenced above, I dismissed the negligence claims pursuant to Rule 12(b)(6) because these claims were devoid of factual allegations. Order at 4, [ECF No. 320], filed March 30, 2010. I explicitly declined to address the Economic Loss Rule argument at that time, given the posture of the case. *Id.*

SSFCU also notes that STC in particular, relied on Colorado law when it filed four separate Designation of Non-Parties at Fault documents, asserting that thirteen non-parties were either wholly or partially at fault for the damages complained of by SSFCU. *See* STC's Designations of Non-Parties at Fault, [ECF Nos. 467, 473, 486, 574]. These designations were based on a Colorado statute permitting a party to allocate its liability and damages to others that it can establish are also liable. *See* C.R.S. § 13-21-111.5(3)(a,b). As SSFCU notes, this litigation has now been pending for over two years. Having relied on Colorado law throughout the earlier stages of this litigation to obtain dismissal of certain claims and reduce or apportion their liability, SSFCU contends the Closing Agents are now judicially estopped from now applying California law to their claims.

### a. The Doctrine of Judicial Estoppel

The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case by relying a particular argument and then taking a contradictory position to prevail in another phase of the case. *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001) (noting the purpose of judicial estoppel is "to protect the integrity of the judicial process"); *see also*

*Johnson v. Lindon City Corp.* 405 F.3d 1065, 1069 (10th Cir. 2005) (announcing that the Tenth Circuit has adopted doctrine of judicial estoppel).   While a court may invoke judicial estoppel at its discretion, there are three primary factors I must consider. *Eastman v. Union Pacific Railroad Company*, 493 F.3d 1151, 1156 (10th Cir. 2007). First, I must look at whether a party's later position is "clearly inconsistent" with its earlier position.  *Id.* at 1156 (citing *New Hampshire*, 532 U.S. at 750).   Second, I will inquire "whether the suspect party succeeded in persuading a court to accept that party's former position" such that "judicial acceptance of an inconsistent position would create the perception that either the first or second court was misled."  *Id.*  Finally, I will look at whether "the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped."  *Id.*

### b.  Analysis

In this case, I find that the doctrine of judicial estoppel does not operate to prevent the Closing Agents from asserting that California law should apply.[1]   Although the Closing Agents relied on Colorado law in their earlier filings, their current position of advocating for California law is not "clearly inconsistent" with their earlier position. SSFCU focuses on the Closing Agents' reliance on Colorado's Economic Loss Rule. However, the result would have been the same even under California law because each state applies its Economic Loss Rule the same way.   *Compare Town of Alma*, 10 P.3d at

---

[1] Although I am applying the federal judicial estoppel doctrine here, the outcome would be the same under either the Colorado or California judicial estoppel doctrines. Colorado courts use equitable estoppel to "require [that] parties maintain a consistency of positions in the proceedings…[in order] to prevent[] the parties from deliberately shifting positions to suit the exigencies of the moment."  *Estate of Burford v. Burford*, 935 P.2d 943, 947 (Colo. 1997) (listing elements).   Similarly, California courts apply judicial estoppel to "preclude a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position."  MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc., 115 P.3d 41, 46 (Cal. 2005) (listing elements).

1264 ("a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.") *with Robinson Helicopter Co., Inc. v. Dana Corp*, 102 P.3d 268, 273 (Cal. 2004) (applying the economic loss rule and explaining that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles in tort law.").

Moreover, the fact that the Closing Agents relied on Colorado's Economic Loss Rule in their motions and now argue for California law has not misled the court.   Although I considered the Closing Agents' argument for invoking this rule, I ultimately decided their motion on F.R.C.P. 12(b)(6) grounds, specifically explaining that I would not rule on the applicability of the Economic Loss Rule at the pleading stage.   I inferred that should the Economic Loss Rule be raised at a later point in the litigation, SSFCU will still have to overcome this rule regardless of whether California or Colorado law is applied.   As a result, the Closing Agents will not gain an "unfair advantage" if California law is applied to this case.   At the pleading stage, these claims would have been dismissed regardless of whether Colorado or California law had applied because they failed to satisfy the federal pleading standard.   Order at 4, [ECF No. 320], filed March 30, 2010 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).   Although SSFCU asserts it has "expended substantial resources" including hiring experts to apply Colorado law, this does not give the Closing Agents an unfair advantage that gives rise to judicial estoppel.

Additionally, the filing of various Designations of Non-Parties at Fault pursuant to C.R.S. § 13-21-111.5(3)(b) also does not trigger judicial estoppel because the Closing Agents will not gain an unfair advantage if California law is applied to this case.   In fact,

the Closing Agents, and STC specifically, would lose the benefit of these designations because the jury would not be able to consider the named non-parties when apportioning fault.   Instead, as STC points out in its Choice of Law Motion, if California substantive state law applies, STC would have to "avail itself of third-party procedures found in F.R.C.P. 14, 19, and 20, and the designations would then be meaningless."   *See* Defendant STC's Motion for Determination of Applicable Law at 7, [ECF No. 691], filed August 15, 2011.   Because the doctrine of judicial estoppel does not operate to prevent the Closing Agents from asserting that California law should apply to this case, I will now consider the choice of law arguments raised by the parties.

**III.**   <u>**Choice of Law**</u>

    **a. Outcome Determinative Conflicts**

When more than one state's law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law.   *United Int'l Holdings, Inc. v. Wharf Holdings Ltd.*, 946 F. Supp.. 861, 866 (D. Colo. 1996); *see also Iskowitz et al. v. Cessna Aircraft Co. et al.,* 2010 WL 3075476 (D. Colo. Aug. 5, 2010).   If there is no outcome determinative conflict in the potentially applicable bodies of law, the law of the forum is applicable.   *United Int'l Holdings*, 946 F. Supp. at 866.   In this case, the Closing Agents have identified three differences between California and Colorado laws which they argue give rise to an outcome determinative conflict.   Based on my analysis below, the Closing Agents have successfully demonstrated at least one potentially outcome determinative conflict between the law of California and the law of Colorado.

### i. Full Credit Bid Rule

First, California has a Full Credit Bid Rule while no such rule exists in Colorado. Under California law, at a non-judicial foreclosure sale like the one in this case, a lender is permitted, but not required, to make a "full credit bid", which is a bid "in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure."  *Alliance Mortgage Company v. Rothwell,* 900 P.2d 601, 608 (Cal. 1995)   The Full Credit Bid Rule is a California law that bars a lender's recovery of loan losses when the lender obtained the real property security for the loan at a trustee's sale with a credit bid in the full amount of the outstanding debt on the loan. *See e.g. Altus Bank v. State Farm Fire and Casualty Co.,* 758 F. Supp. 567, 571 (C.D. Cal. 1991), *aff'd* 979 F.2d 852 (9th Cir. 1992).   In light of this rule, OCT argues that under CA law, SSFCU would be barred from further recovery because it obtained each of the properties involved in OCT's escrows via full credit bids.   Since a corresponding rule does not exist under Colorado law, SSFCU would be permitted to pursue further recovery.   Therefore, the Closing Agents assert this is an outcome determinative conflict. In contrast, SSFCU argues that there is no outcome determinative conflict because California's Full Credit Bid Rule is not applicable in this case, which means that the case should proceed under Colorado law.

Under the Full Credit Bid Rule, when a lender makes a full credit bid at the foreclosure of its mortgage, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less.   *Alliance*, 900 P.2d at 608-11(explaining the rule bars subsequent claims for insurance proceeds, net rent proceeds, or damages for waste that might otherwise be allowed under the

anti-deficiency statutes).   While the rule may operate to foreclose certain post-sale remedies by the lender-beneficiary against both the borrower and third parties, it does not as a matter of law bar all claims against a third party non-borrower.   *See Id.* at 613 (explaining that the full credit bid rule was not intended to insulate third party tortfeasors from liability for fraudulent conduct).   The full credit bid rule cannot be used as a defense where the defendants that are fiduciaries or agents of the lender make fraudulent misrepresentations on which the lender justifiably relies in making not only its loans but also its full credit bid.   *Alliance,* 900 P.2d at 614.   In other words, "in order to avoid the full credit bid rule, the lender must have been induced to enter into the loan by the false representation, *and* still be under the mistaken belief that the representation was true at the time it makes the full credit bid." *First Commercial Mortgage Co. v. Reece*, 108 Ca. Rptr.2d 23, 29 (Cal. App. Ct. 2001)(citations omitted).   In *Alliance*, a real estate lender, brought an action against the title insurers, and others alleging that the defendants fraudulently induced it to make loans by misrepresenting the value of the properties, drafting innacurate and misleading title reports, and falsely representing that the escrow instructions had been followed.   *Id.* at 604-05.   The court remanded the case to determine whether or not the Plaintiff could establish justified reliance on the defendants' misrepresentations before deciding whether the claim was barred by the full credit bid rule.   *Id.* at 614.

Additionally, some California courts have extended *Alliance* by holding the Full Credit Bid Rule also does not bar as a matter of law claims for negligence or negligent misrepresentation against a non-borrower third party.   *See Kolodge v. Boyd*, 88 Cal. App. 4th 349, 372 (Cal. Ct. App. 2001); *but see Pacific Inland Bank v. Ainsworth*, 48 Ca.

Rptr.2d 489, 490 (Cal. Ct. App. 1996) (declining to extend *Alliance* beyond fraud claims and holding the full credit bid rule bars other tort claims including negligence) .   This inquiry again turns upon a showing of justified reliance.   *Id.* at 373.

In this case, SSFCU alleges negligence and negligent misrepresentation against all the Closing Agents as well as intentional misrepresentation and other torts against Stewart Title specifically.   *See* Fourth Amended Complaint [ECF No. 687], filed July 18, 2011.   Although under California law some of these claims may not barred as a matter of law, depending on whether SSFCU can establish among other things justified reliance, I need not decide the applicability of the Full Credit Bid rule at this juncture of the litigation. However, this difference between California and Colorado law, whether or not the Full Credit Bid rule is ultimately applied, is sufficient to require a choice of law analysis because it creates an outcome determinative conflict.   Although SSFCU argues that even if the Full Credit Bid Rule applied, it would preempted by federal law concerning damages against those who have misappropriated credit union funds, I do not find this argument persuasive.

### ii.  Colorado Compliance Review Committee Privilege

The second outcome determinative conflict raised by the Closing Agents involves Colorado's Compliance Review Committee (CRC) Privilege.   The CRC privilege protects documents prepared for or created by a compliance review committee from discovery in a civil action.   § 11-71-103(2).   This privilege does not exist under the law of California. SSFCU has repeatedly invoked this privilege to avoid disclosing several documents during discovery.   OCT specifically argues that the withheld documents are central to its defense and concern core components of the litigation, such as, "SSFCU's knowledge of

the allegedly fraudulent nature of the loans, SSFCU's supposed detrimental reliance on actions attributed to multiple defendants, and both the causation and measuring of SSFCU's alleged damages."   OCT's Motion for Choice of Law, 3 [ECF No. 690].   OCT further argues that SSFCU has instructed deponents not to answer questions on this same privilege ground.

### iii.   Standard of Care of Escrow Agents

The third outcome determinative conflict raised by Stewart Title specifically is that California has law governing the standard of care of escrow agents while Colorado does not.   *See* Stewart Title's Motion for Determination of Applicable Law at 5, [ECF No. 691], filed August 15, 2011.   SSFCU disputes this characterization, arguing there is no outcome determinative conflict because both Colorado and California law requires closing agents to have a duty to faithfully comply with the parties' instructions.

As Stewart notes, both the California Civil Code and the California Financial Code contain sections describing the duties of an escrow agent.   *See e.g.* Cal. Civ. Code. § 1057 *et seq.* (describing prohibited acts and conflicts of interest for escrow agents); *see also* Ca. Fin. Code. § 17403.2 (prohibiting alterations to escrow instructions without consent of all signatories to the original instructions).   However, I agree with SSFCU, that while there may not be a corresponding state code section in Colorado, Colorado case law also requires escrow agents to follow the parties' instructions.   *See e.g. White v. Brock*, 584 P.2d 1224, 1228 (Colo. App. 1978) (at a minimum, closing agents have a duty to fill out closing documents and carry out the instructions of the parties).

Although I agree that the difference in state statutes gives rise to an outcome determinative conflict necessitating a choice of law analysis, the differences between

Colorado and California law with respect to both the Full Credit Bid Rule and the CRC

Privilege create outcome determinative conflicts between the applicable bodies of state

law.   Therefore, I will proceed to the choice of law analysis.

### b.  Contract Claims – California Law Applies

In this case, SSFCU has alleged breach of contract, negligence, negligent

misrepresentation, and breach of fiduciary duty against all of the Closing Agents.   As to

Stewart Title specifically, SSFCU also alleges among other things intentional

misrepresentation and fraudulent concealment.   As a federal court sitting in diversity, I

must apply the choice of law principles of the forum state.   *Klaxon Co. v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487, 496 (1941); *Farris v. ITT Cannon*, 834 F. Supp. 1260, 1266 (D.

Colo. 1993).   Colorado has adopted the Restatement (Second) Conflict of Laws

approach to choice of law issues involving both contract and tort claims.   *See Wood*

*Bros. Homes Inc., v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979)

(adopting the Restatement (Second) approach for contract actions); *see also Dworak v.*

*Olson Construction Co.,* 551 P. 2d 198, 199 (Colo. 1976) (adopting the Restatement

(Second) approach for tort actions).

For contract claims, I must apply the law of the state with the most significant

relationship to the contract.   *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601

P.2d 1369, 1372 (Colo. 1979); *Budd v. American Excess Ins. Co.*, 928 F.2d 344, 346-47

(10th Cir. 1991).   To determine which state has the most significant relationship, I am

required to take into account the principles set forth in both Section 6 and Section 188 of

the Restatement (Second).   *Wood Bros. Homes*, 601 P.2d at 1372.   Section 6 of the

Restatement states that when there is no statutory directive of what state's law applies,

the factors relevant to the choice of the law analysis include:

>   (a) the needs of the interstate and international systems;
>   (b) the relevant policies of the forum;
>   (c) the relevant policies of other interested states and the relative interests
>         of those states in the determination of the particular issue;
>   (d) the protection of justified expectations;
>   (e) the basic policies underlying the particular field of law;
>   (f) certainty, predictability and uniformity of result, and
>   (g) ease in the determination and application of the law to be applied.

*Wood Bros.*, 601 P.2d at 1372 (quoting § 6 of the Restatement (Second)).   Under

Section 188, if the parties have not agreed to an effective choice of law by contract, the

contacts to consider include: (1) the place of contracting; (2) the place of negotiation of

the contract; (3) the place of performance; (4) the location of the subject matter of the

contract; and (5) the domicile, residence, nationality, place of incorporation and place of

business of the party.   *See Wood Bros.,* 601 P.2d at 1372 (citing Restatement 2nd §

188(2)).

In addition to these general principles, several sections of the Restatement

(Second) apply to specific types of contract.   In the particular case of a contract for the

rendition of services, Restatement (Second) § 196 operates to create "a presumption that

the state where the services are to be performed is the state having the most significant

relationship to the contractual issues." *Farris v. ITT Cannon, a Div. of ITT Corp.*, 834

F.Supp 1260, 1267 (D. Colo 1993) (citing *Wood Bros. Homes Inc.*, 601 P.2d at 1373).

This rule applies "if the major portion of the services called for by the contract [are] to be

rendered in a single state and it is possible to identify this state at the time the contract is

made."   Restatement (Second) § 196 cmt. a (1971).   Section 196 provides:

>   The validity of a contract for the rendition of services and the rights created
>   thereby are determined, in the absence of an effective choice of law by the
>   parties, by the local law of the state where the contract requires that the

> services, or a major portion of the services, be rendered, unless, with
> respect to the particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the transaction and the
> parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 196 (1971).   Therefore, the presumption

may be overcome if another state, other than the one where the services are rendered,

has a more significant relationship to the transaction or the parties under the principles set

forth in § 6.

In the case at hand, SSCFU argues that Colorado law must be applied

because FAM, on behalf of New Horizons, engaged the Closing Agents from

Colorado, making Colorado the place of contracting.   SSFCU also characterizes

Colorado as the place of negotiation because the closing instructions were issued

from Colorado without negotiation or modification.   According to SSFCU, the

remaining factors are split.   The place of performance is between Colorado and

California because New Horizons performed its obligations under the closing

instructions from Colorado while the Closing Agents performed their respective

escrows and closings in California.   It also argues the location of the subject

matter of the contract is split between both states because the properties were in

California while the loan funds were issued from Colorado.   Finally, SSFCU notes

that some of the parties are domiciled, reside, or are incorporated in Colorado,

while all of the Closing Agents principle places of business are California.

The Closing Agents collectively argue for application of California law,

primarily because this is the state in which the escrow services under the contract

were performed.   Moreover, all of the Closing Agents are California companies

and all of the real properties involved are located in California.   LTC also points

out that the Deeds of Trust for each Borrower provide for the application of the law of the jurisdiction where the property was located, i.e. California.   *See* LTC Motion for Determination of Law on Choice of Law at 6 [ECF No. 692], filed August 17, 2011 (citing Exhibit E, an example of the deed of trust).

Turning to my analysis, Section 196 creates a rebuttable presumption in favor of applying California law to these claims because all of the escrow services were performed entirely in the state of California.   California "enjoys greatest significance when the work is to be more or less stationary and is to extend over a considerable period of time.   *See* Restatement (Second) of Conflict of Laws § 196 cmt. b (1971).   Here, all transactions were conducted in California, the escrows were closed there, loan funds were dispersed there (although the funds initially came from Colorado) and the loans funded purchases of real property located in California.   SSFCU offers no arguments under Section 6 to rebut this presumption.

Moreover, after applying the factors in Section 188, the balance still weighs in favor of California.   The majority of the services to be rendered under the contract were in fact rendered in California, making it both the place of performance and the location of the subject matter of the contract.   Additionally, the Closing Agents accepted FAM's contract for escrow services from its California offices, making California the place of contracting.   *See* Restatement (Second) § 188 cmt. e ("The place of contracting is the place where occurred the last act necessary under the forum's rules of offer and acceptance to give the contract binding effect…"); *see also Farris*, 834 F. Supp. at 1267 (place of acceptance of an

offer is the place of contracting).   I disagree with SSFCU's characterization of the place of negotiation being Colorado—if no negotiations took place, this factor becomes less important rather than defaulting to Colorado.   At best, the negotiations were split between California and Colorado.   *See* STC's Motion for Determination of Applicable Law at 10 [ECF No. 691], filed August 15, 2011 (conceding this factor is split between the two states).   The final factor, the parties' location implicates both California and Colorado because the Closing Agents are California companies, while First American mortgage was a Colorado corporation. Using this analysis, three of these factors favor California while two are split between both states and none of them favors Colorado.

Upon consideration of all of these five contacts as well as the factors laid out in Section 6, I find that SSFCU has failed to rebut the presumption that California has the most significant relationship to the breach of contract claims.   California has a much stronger interest than Colorado in seeing that its laws apply to contracts governing escrow services carried out for real properties located in California.   For example, California has an interest in regulating its escrow industry, as evidenced by the standards it imposes in both its Civil Code and Financial Code.   The existence of the full credit bid rule also indicates California's strong interest in regulating deficiency judgments and the circumstances under which a lender may pursue action after a full credit bid.   Taken together, I find that California substantive law should be applied in this case.   I next consider whether California law would apply using the most significant approach for tort claims.

### c. <u>Tort Claims</u>

In multistate tort controversies, tort claims are also analyzed using the most significant relationship test.   *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507 (Colo. 2007).   Using this approach, "the court must determine which state has the most significant relationship to the occurrence and the parties."   *Abdelsamed v. New York Life Ins. Co.,* 857 P.2d 421, 428 (Colo. App. 1993).   This analysis requires an evaluation of the relative importance of the following factors:   1) where the injury occurred; 2) where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; and 4) the place where the relationship between the parties is centered.   Restatement (Second) Conflict of Laws § 145 (1971); *see also Dworak*, 551 P.2d at 200 (applying § 145 to tort claims).   The general policy considerations stated in § 6 must also be considered as to the tort claims. *Abdelsamed v. New York Life Ins. Co.*, 857 P.2d 421, 428-29 (Colo. App. 1993), *rev'd and remanded on other grounds sub nom. Hock v. New York Life Ins. Co*, 876 P.2d 1242 (Colo. 1994).   In a tort case, "'the protection of the justified expectations of the parties, which is of extreme importance in such fields as contracts, . . . is of lesser importance in the field of torts.'"   *Id.* at 429 (quoting § 145)).   "Of greater importance in tort cases is the 'purpose sought to be achieved the by relevant tort rules of the interested state.'"   *Id.* (quoting § 145, comment c).

In this case SSFCU asserts that the place where the injury occurred is Colorado because that is where SSFCU, a Colorado corporation, suffered its losses resulting from the alleged misconduct of the Closing Agents.   Relying on the principles stated in § 6, SSFCU argues Colorado should prevail because it has a strong interest in protecting its

citizens (namely New Horizons) from fraud.   It also argues that as a state-chartered

credit union, New Horizons was subject to Colorado regulation and therefore would

reasonably expect Colorado law to apply to the loan it issued in reliance on the Closing

Agents' conduct.   Finally SSFCU argues that in the interest of "certainty, predictability

and uniformity of result" it is a more efficient use of judicial resources to apply Colorado

law to claims against the Closing Agents, because the claims against the other

defendants will be resolved under Colorado law.   *See* SSFCU's Response to Closing

Agents' Motions at 25-26 [ECF No. 699], filed September 16, 2011.

The Closing Agents, however, describe California as both the place of injury and

the place where the conduct causing the injury occurred because the escrow services at

issue were performed entirely in California.   For this reason, the Closing Agents assert

that the parties' relationship is also centered in California.   Although the Closing Agents

concede the parties are domiciled in different states, they assert that "the nucleus of

operative facts forming the basis of SSFCU's claims involve escrow services rendered

exclusively in …California" making it the state with the most significant relationship.

OCT's Motion on Choice of Law at 5 [ECF No. 690], filed August 12, 2011.

Based on my analysis of the factors set forth in § 145 as well as the policy

considerations in § 6, I find that California law should be applied to the tort claims.   I

agree with the Closing Agents that the place where the injury occurred is California not

Colorado.   Although New Horizons may have suffered injury to its finances in Colorado,

on balance, California is the state with the most significant relationship to the occurrence.

As an additional matter SSFCU argues that the doctrine of depecage must be

applied in this case.   Even relying on this doctrine, I reach the same conclusion that

California provides the substantive body of law in this case.   The doctrine of depecage is applicable to conflict of law determinations in cases involving multiple issues and multiple parties.   Under this doctrine, the rules of different states may be applied by focusing a conflict of law determination on the precise issue involved.   *See Iskowitz v. Cessna Aircraft Co.*, 2010 WL 3075476 at *3 (D. Colo., 2010) (concluding Kansas has the most significant relationship to the claims against one defendant while also concluding Colorado law has the most significant relationship to the claims against a different defendant).   Contrary to SSFCU's assertion, depecage is hardly a "well-settled" doctrine in Colorado although the *Iskowitz* court relied on it.

In this Order, I have separately analyzed which state has the most significant relationship to SSFCU's contract claims against the Closing Agents as well as SSFCU's tort claims against the Closing Agents.   Although I did not invoke the doctrine of depecage, I have focused my conflict of law determination according to the precise issues involved.   Therefore, I find no merit in SSFCU's argument that the doctrine of depecage would result in the application of Colorado law.   The only effect, if any, of the depecage doctrine that I find relevant, is that it would permit the court to apply California law to the claims against the Closing Agents, while applying Colorado law to the claims against other defendants in this matter.

I now turn to the final issue of whether California or Colorado should supply the law of privilege.

### d.  Choice of Law as Applied to Privilege Issues

As I explained above, SSFCU has relied on Colorado's CRC Privilege to allegedly protect several documents from disclosure during discovery.   Under Colorado law,

"compliance review documents…are confidential and not discoverable or admissible in evidence in any civil action arising out of matters evaluated by the compliance review committee."   COLO. REV. STAT. ANN. § 11-71-103.   This privilege protects "compliance review documents," defined in the statute as those "documents exclusively prepared for or created by a compliance review committee."   § 11-71-102(2).   The statute is designed to allow financial institutions to make candid assessments of their "loan underwriting standards"; "asset quality"; "compliance with federal or state regulatory requirements"; and, "financial reporting to federal or state regulatory agencies. " § 11-71-103.   There is no corresponding California version of this privilege.

SSFCU claims that its predecessor, New Horizons, initiated an internal investigation in response to a Cease & Desist Order issued by the Colorado Division of Financial services in late 2005.   *See* SSFCU's Consolidated Response to Closing Agent's Motions to Compel at 8 [ECF No. 656], filed May 20, 2011.   On January 11, 2006, New Horizons' Board of Directors passed a resolution creating a "Compliance Committee" to assure compliance with the December 2005 Cease and Desist Order.   *Id.* at 11.   To assist its investigation, New Horizons engaged a consultant, Financial Institution Management Associates Corporation (FIMAC), to investigate loan quality and regulatory issues relevant to the Cease & Desist Order.   *Id.* at 8.   FIMAC agreed to provide services to New Horizons pursuant to a Consulting Services Agreement whose governing law clause specified that the contract would be construed pursuant to Colorado law.   *Id.* at 9.   SSFCU explains that the compliance investigation encompassed thousands of consumer loans, car loans, real property loans and boat loans that New Horizons had issued to borrowers throughout the U.S.   *Id.*   SSFCU acknowledges that a

"small minority" of the loans at issue in this case were examined as part of the broader investigation of the real property loans that New Horizons had issued.   *Id.*

The discovery disputes in this case are related to many documents which SSFCU claims were generated during the compliance investigation and thus are not discoverable under Colorado's CRC Privilege.   The Closing Agents allege that SSFCU has also instructed numerous deponents not to answer on the grounds of the CRC Privilege and the accountant-client privilege.   See OCT's Motion on Choice of Law at 3 [ECF No. 690]. The Closing Agents argue that California privilege law should control and that even if Colorado supplies the law of privilege, SSFCU has gone beyond the scope of the CRC privilege to prevent discovery.

Under the Federal Rules of Evidence, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."   Fed. R. Evid. 501.   "While the Tenth Circuit has held, in conjunction with Fed. R. Evid. 501, that 'state law supplies the rule of decision on privilege in diversity cases,' it has not specifically identified which state law applies."   *Elvig v. Nintendo*, 2009 WL 3048455 (D. Colo.)(citing *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.* 136 F.3d 695, 699 (10th Cir. 1998)(using Wyoming state law to decide privilege issue)); *see also Hercules, Inc. v. Martin Marietta Corp.*, 143 F.R.D. 266, 268 (D. Utah 1992)(applying Utah conflicts of law rules to decide privilege issues using the Restatement § 139 significant contacts analysis).   In *Shriver v. Baskin-Robbins Ice Cream Co.*, the court suggested that the state law to apply is that which will likely supply the rule by which the case will be resolved.   *See e.g. Shriver v. Baskin-Robbins Ice Cream Co.* 145 F.R.D. 112, 114 n. 1 (D. Colo. 1992).   However, *Shriver* is distinguishable because the parties did not raise a

conflict of law issue with respect to which state's privilege law should apply.[2]   More importantly, the Colorado Supreme Court has explained that generally, "the law of the forum state determines whether or not evidence is admissible."   *See Thompson*, 950 P.2d at 611 (citing *Union Supply Co. v. Pust,* 583 P.2d 276 (1978)).

Although there is very little case law on this issue, it appears that Colorado has adopted the analytical approach set forth in the Restatement (Second) Conflict of Laws for resolving choice of law issues in the context of privileges.   *See People v. Thompson*, 950 P.2d 608, 611 (Colo. 1997) (applying the Restatement approach to resolve a choice of law issue in the context of spousal privileges).   Restatement Section 139 requires the court to consider which state has the most significant relationship to the communication. *See* Restatement (Second) Conflict of Laws § 139 (1971).   Specifically, Section 139 states:

> 1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

> 2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

*Id.*

Generally, the state with the most significant relationship to the communication will be the state where the communication took place.   *Id.* at comment e.   However, the

---

[2] Relying on *Shriver*, the *Elvig* court explained that "Colorado courts interpreting Fed. R. Evid. 501 imply that the state law to apply is that which will likely supply the rule by which the case will be resolved."   2009 WL 3048445 at *2.   However, the *Elvig* court chose to apply Colorado law, "in the interests of judicial economy and because neither party objects," making the context distinguishable from the instant case. *See id.*

geographic location need not be the only factor to consider if another state has strong interests which may outweigh this factor.   *See Thompson*, 950 P.2d at 611.   Other factors to consider include, "(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved; (2) the relative materiality of the evidence sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties."   *Id.* (applying these factors to determine if the forum state favoring admission of the evidence should prevail over the law of the state with the most significant relationship to the communication, which would exclude the information as privileged).

In *People v. Thompson*, the Defendant's wife told Oregon police that while the couple was living in Oregon, the Defendant had previously confessed to her that he had murdered a drug dealer in Colorado.   *Id.* at 610.   During the Defendant's trial in Colorado for the murder of the drug dealer, the wife's testimony was admitted and the Defendant was convicted.   *Id.*   On appeal the Defendant argued that the court erred by applying Colorado spousal privilege law, rather than Oregon spousal privilege law, which would have prevented his wife from testifying.   *Id.*   The court upheld the application of Colorado law, determining that although the communication occurred in Oregon, it directly concerned a serious crime allegedly committed by the defendant in Colorado. *Id.* at 611.   Moreover, the victim was a Colorado citizen, the defendant was charged in Colorado, and the wife's testimony was "extraordinarily important evidence."   *Id.*

In this case, all of the communications at issue in this discovery dispute pertain to an investigation conducted by one Colorado corporation (FIMAC) for another Colorado corporation (New Horizons).   The investigation was conducted entirely in the state of Colorado and was initiated in response to an order from a Colorado government agency.

Moreover, at the time New Horizons entered into its contract with FIMAC to have FIMAC conduct the investigation, the parties expected that Colorado law would apply to their interactions and communications.   *See Hercules, Inc. v. Martin Marietta Corp.*, 143 F.R.D. 266, 267 (D. Utah 1992) (considering the expectation of the parties when determining which state's law should apply).   Based on these facts, I find that Colorado is both the forum state and the state with the most significant relationship to the communication.

The Closing Agents point out that the discovery dispute here involves the Closing Agents and SSFCU, rather than FIMAC.   They also claim that the evidence sought here would be "extraordinarily important evidence" to their defenses, all of which will be analyzed under California law.   While this information could be useful to the Closing Agents' defense, these arguments do not persuade me to apply California law instead of Colorado law.   Although the policy underlying Restatement § 139 favors admissibility, the specific privilege dispute in this case does not fit into the two situations contemplated by the Restatement rules, where the law of the forum state is at odds with the law of a different state where the communications were made.   Here, the communications at issue were made in Colorado, between Colorado corporations, to respond to regulatory concerns from a Colorado agency.   As the forum state, Colorado has a strong policy interest in enforcing its own privileges to protect communications made entirely within the state between two Colorado corporations.   In the statute itself, the Colorado legislature declared that "compliance review committees are essential to the operation and performance of financial institutions and that the public will benefit from incentives to identify and remedy compliance issues."   COLO. REV. STAT. ANN. § 11-71-101.

Furthermore, none of the pertinent communications was made in California nor did the investigation from which the communications arose take place in California.   Finally, it is in the interest of judicial economy to apply Colorado law to this discovery dispute because it avoids the need to reopen discovery at this phase in the litigation. Accordingly, I find that Colorado privilege law applies to the discovery disputes and SSFCU may rely on Colorado's CRC privilege.   However, I express no opinion on the scope of the CRC privilege that SSFCU wishes to exercise in this case.   The Magistrate Judge will need to separately assess the appropriateness of SSFCU's use of the CRC privilege during discovery and decide whether it has been properly invoked and applied.

## IV.   <u>Conclusion</u>

Based on my analysis above, I find that California has the most significant relationship to both the tort and contract claims that SSFCU brings against the Closing Agents.   Therefore, California law becomes the substantive law to be applied in this case for the tort and contract claims against the Closing Agents.   However, for the reasons stated above, as the forum state, Colorado supplies the law of privilege.   Accordingly, it is

ORDERED that Defendant Orange Coast Title Company of Southern California's Motion for Hearing/Conference re Choice of Law [ECF No. 690], filed August 12, 2011 is **GRANTED IN PART and DENIED IN PART**.   To the extent OCT seeks the application of California law to the tort and contract claims, the motion is **GRANTED**.   However, the motion is **DENIED** as to the application of California law to the privilege issue and Colorado law shall apply.   It is

FURTHER ORDERED that Defendant Stewart Title of California, Inc.'s (STC) Motion for Determination of Applicable Law [ECF No. 691], filed August 15, 2011 is **GRANTED IN PART and DENIED IN PART.**   To the extent STC seeks the application of California law to the tort and contract claims, the motion is **GRANTED**.   However, the motion is **DENIED** as to the application of California law to the privilege issue and Colorado law shall apply.   It is

FURTHER ORDERED that Defendant Lawyers Title Company's (LTC) Motion for Determination of Law on Choice of Law [ECF No. 692], filed August 17, 2011 is **GRANTED IN PART and DENIED IN PART.**   To the extent LTC seeks the application of California law to the tort and contract claims, the motion is **GRANTED**.   However, the motion is **DENIED** as to the application of California law to the privilege issue and Colorado law shall apply.

Dated: March 21, 2012

BY THE COURT:


s/ Wiley Y. Daniel_____
Wiley Y. Daniel
Chief United States District Judge