IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00955-WYD-CBS

SECURITY SERVICE FEDERAL CREDIT UNION,

    Plaintiff,

v.

FIRST AMERICAN MORTGAGE FUNDING, ET AL.,

    Defendants.

_____

**ORDER**
_____

    THIS MATTER is before the Court on the following motions:

1. Orange Coast Title Company of Southern California's Motion To Dismiss [ECF No. 774], filed on May 25, 2012;

2. Stewart Title of California, Inc.'s Motion To Dismiss [ECF No. 778], filed on May, 29, 2012;

3. Orange Coast Title Company of Southern California's Motion For Summary Judgment [ECF No. 889], filed on September 29, 2012;

4. Security Service Federal Credit Union's Motion For Leave To File More Than A Single Motion For Summary Judgment [ECF No. 900], filed on October 2, 2012;

5. Orange Coast Title Company of Southern California's Motion For Judgment On The Pleadings [ECF No. 904], filed on October 8, 2012;

6. Lawyers Title Company's Motion For Summary Judgment [ECF No. 914], filed on October 8, 2012;

7. Security Service Federal Credit Union's Motion For Partial Summary Judgment On The First And Twelfth Claims For Relief [ECF No. 913], filed on October 9, 2012;

8. First American Mortgage Funding, LLC ("FAM"), First American Mortgage, Inc., Construction Disbursement Services, Inc., Construction Financial Services, LLC, Kevin B. Jordan, William Depuy, Jeffrey Jordan, Shaun Jordan, and Mark Campbell's ("the FAM Defendants") Defendants' Motion for Summary Judgment [ECF No. 919], filed on October 9, 2012;

9. Kevin B. Jordan, William Depuy, Jeffrey Jordan, Shaun Jordan, and Mark Campbell's ("the *Pro Se* Defendants") Motion for Sanctions [ECF No. 920], filed on October 9, 2012; and,

10. Stewart Title of California's Motion for Summary Judgment [ECF No. 939], filed on October 11, 2012.

## BACKGROUND

This suit arises from the issuance of 26 construction loans in an alleged "straw borrower" scheme.

On August 1, 2003, New Horizons Community Credit Union ("New Horizons") entered into a Funding and Servicing Agreement ("FSA") [ECF No. 917-2] with defendant, First American Mortgage Funding, LLC ("FAM"). Pursuant to the FSA, FAM agreed to "originate, close, service and administer [construction loans for New Horizons] and provide a commitment for permanent financing to pay off the construction loan[s] upon maturity." ECF No. 917-2, p. 2, ¶ 3. FAM originated 26 construction loans for New Horizons, and in turn, New Horizons funded the loans. Five different title companies performed closing procedures for the loans: (1) defendant, Orange Coast Title Company of Southern California ("Orange Coast"); (2) defendant, Lawyers Title Company ("Lawyers Title"); (3) defendant, Stewart Title of California ("Stewart Title"); (4) defendant, First American Title Insurance Company ("First American"); and, (5) defendant, North American Title Company of Colorado ("North American").[1]

---

[1] Plaintiff, Security Service Federal Credit Union ("Security Service"), voluntarily dismissed all claims against First American on April 1, 2011, [ECF No. 604] and voluntarily dismissed all claims against North American on November 9, 2011 [ECF No. 720].

Collectively, the title companies are referred to as "the Closing Agents."

On December 13, 2005, Colorado's State Commissioner of Financial Services issued New Horizons a Cease and Desist Order [ECF No. 892, pp. 40-49] stating that it had engaged in unsafe and unsound practices regarding its loan portfolio with FAM. On December 31, 2005, the National Credit Union Association ("NCUA") issued a Report of Examination on New Horizons [ECF No. 894]. The report states that the examination raised "extensive and severe red flags" with respect to some of the FAM loans and that the examiners had "grave concerns regarding NHCCU's [New Horizons's] residential construction loan lending program." ECF No. 894, p. 5, ¶¶ 5 & 7. On or about January 11, 2006, New Horizons hired Financial Institution Management Associates Corporation ("FIMAC") to investigate the FAM loans. FIMAC's report allegedly stated that at least some of the loans originating from FAM involved straw borrowers.

In April 2006, New Horizons was placed into conservatorship. On July 10, 2007, the NCUA, as liquidating agent of New Horizons, entered into a Purchase and Assumption Agreement ("PAA") [ECF No. 917-1] with the plaintiff, Security Service Federal Credit Union ("Security Service"). The agreement states that the NCUA's Board accepted appointment from Colorado's Division of Financial Services as New Horizons's liquidating agent due its "bankruptcy or insolvency." ECF No. 917-1, p. 2, ¶ 2. Under the PAA's terms, Security Service "agreed to accept the transfer of certain of the assets, liabilities, and shares of the Liquidating Credit Union [New Horizons] . . . " *Id.* at ¶ 4.

On May 7, 2008, Security Service filed its original complaint [ECF No. 1] alleging 11 claims against the defendants in connection with the 26 construction loans funded by

New Horizons. On July 18, 2011, Security Service filed its Fourth Amended Complaint [ECF No. 687]. In the Fourth Amended Complaint, Security Service asserts 20 claims against the named defendants including, *inter alia*, claims for breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, conspiracy, and fraud. The base allegation is that FAM, along with the Closing Agents, fraudulently induced New Horizons to fund 26 construction loans to straw borrowers *i.e.*, borrowers who were allegedly paid by FAM or the Closing Agents in exchange for FAM and the Closing Agents to use the borrowers' personal information, including their credit score, to secure construction loans. The straw borrowers allegedly had no intent to ever reside or construct a residence on the property for which the loan was procured. All the straw borrowers defaulted on their construction loans, leaving New Horizons with a debt of several million dollars. Thus, Security Service, as New Horizons's alleged successor in interest, filed this suit seeking to hold the defendants liable for their actions in the alleged straw borrower scheme.

Orange Coast and Stewart Title filed Motions To Dismiss [ECF Nos. 774 & 778], arguing that California's Economic Loss Rule bars Security Service's tort claims.[2] Orange Coast also filed a Motion For Judgment On The Pleadings [ECF No. 904] in which Lawyers Title joined, arguing that FAM's Third Party Complaint [ECF No. 83] should be dismissed. Orange Coast, Lawyers Title, the FAM defendants, and Stewart Title filed Motions For Summary Judgment [ECF Nos. 889, 914, 919, & 939], arguing *inter alia*, that pursuant to the PAA's terms, Security Service is not the proper plaintiff in this action. Security Service filed a Motion For Partial Summary Judgment On The First

---

[2] On March 21, 2012, I issued an Order [ECF No. 731] stating that California law applies to Security Service's contract claims. ECF No. 731, pp. 13-17.

And Twelfth Claims For Relief [ECF No. 913], arguing that it is entitled to summary judgment on its breach of contract claims against the defendants. Security Service also filed a Motion For Leave To File More Than A Single Motion For Summary Judgment [ECF No. 900]. The *Pro Se* Defendants filed a Motion For Sanctions [ECF No. 920], requesting that I impose sanctions pursuant to FED. R. CIV. P. 11 against Security Service for filing frivolous complaints.

For the reasons discussed below, I find that Security Service is not the proper plaintiff in this action and therefore its claims are DISMISSED WITH PREJUDICE.

## ANALYSIS

### A. Proper Plaintiff

All defendants filed Motions for Summary Judgment [ECF Nos. 889, 914, 919, & 939], and in those motions all defendants challenge Security Service's capacity to bring this suit. The defendants' challenge is based upon the PAA executed by the NCUA and Security Service on July 10, 2007. The PAA states, in pertinent part:

\* \* \* \*

> 5. **Transfer of Assets**
>
> The Liquidating Agent [NCUA] hereby transfers, assigns, conveys, and delivers to the Assuming Credit Union [Security Service] the right, title and interest of the Liquidating Agent and the Liquidating Credit Union [New Horizons] in the assets listed in Schedules A through H of this Agreement. The Assuming Credit Union agrees to accept the loans and other assets at the values listed in Schedules A and B and agrees to accept the assets listed in Schedules C through H. The Liquidating Agent herby assigns the right, title, and interest in all charged off loans on the Liquidating Credit Union to the Assuming Credit Union. The transfer of all assets conveyed to Assuming Credit Union under this Agreement will be effective as of the execution date of this Agreement.

> 6. **Retention of Claims and Recoveries**
>
> Except as otherwise specifically provided for in the Agreement, the parties agree that the Liquidating Agent [NCUA] retains, for the benefit of the liquidation estate of the Liquidating Credit Union [New Horizons], the sole right to pursue claims (through arbitration, litigation, insurance claims, bond claims or otherwise) and to recover any and all losses incurred by the Liquidating Credit Union prior to liquidation.

ECF No. 917-1, p. 6.  The defendants argue that under Provision 6, the NCUA, as Liquidating Agent, retained all claims that could be asserted by Security Service, and therefore Security Service lacks the capacity to pursue any claim asserted in the Fourth Amended Complaint [ECF No. 687].  Security Service argues that any claims that could be asserted against the defendants were transferred, assigned, and conveyed to it under Provision 5's "right, title, and interest" clause.

Provision 5 is entitled "Transfer of Assets" while Provision 6 is entitled "Retention of Claims and Recoveries." ECF No. 917-1, p. 6.  It logically follows that because the two provisions are titled differently, they will address different subject matter; otherwise a distinction between the two provisions would be immaterial.  Provision 5, entitled Transfer of Assets, neither mentions the word "claim" nor does it mention the word litigation.  Provision 5 deals exclusively with *assets* that the NCUA transferred, conveyed, and assigned to Security Service.  Provision 6 on the other hand, entitled Retention of Claims and Recoveries, states that the NCUA "retains, for the benefit of the liquidation estate of the Liquidating Credit Union [New Horizons], *the sole right to pursue claims (through arbitration, litigation, insurance claims, bond claims or otherwise) and to recover any and all losses incurred by the Liquidating Credit Union prior to liquidation.*" ECF No. 917-1, p. 6 (emphasis added).  This language is clear,

- 6 -

express, and it unambiguously grants the NCUA the sole right to pursue claims associated with losses incurred by New Horizons prior to its liquidation. To interpret Provision 5 to mean that the NCUA transferred to Security Service all claims associated with New Horizons's losses, as suggested by Security Service, would mean that I completely disregard Provision 6, which is the only provision in the entire PAA that addresses retention of claims. To do so would be counterintuitive and I will not interpret Provision 5 as such.

During this Court's February 26, 2013, Motions Hearing on all pending motions, Security Service argued that Provision 8 bolsters its argument that Provision 5 transferred, conveyed, and assigned to Security Service all claims associated with New Horizons's losses. Pursuant to Provision 8:

> 8. **Transfer of Records**
>
> The Liquidating Agent [NCUA] hereby assigns, transfers, and delivers to the Assuming Credit Union [Security Service] certain books and records of the Liquidating Credit Union [New Horizons]. The books and records will include, but not be limited to, the following:
>
> - Membership and signature cards and any other agreement between the Liquidating Credit Union and its members.
>
> - Insurance policies.
>
> - Posting source documents which support receipts, disbursements and journal entries.
>
> - Records of deposit and investment balances.
>
> - Payroll and employee records.
>
> - All loan documents within its custody, attributed to the loans being purchased.

- Collateral physically held as security on loans.
- Copies of member statements.
- Deeds, mortgages, abstracts, surveys, and other instruments or records of title pertaining to real estate owned, if any.

ECF No. 917-1, p. 7. Security Service argued that the NCUA could not possibly retain any claims against future defendants for losses incurred by New Horizons if it assigned and transferred all evidence *e.g.*, loan documents, deeds, and mortgages, that could be used to pursue litigation for such claims.

Provision 9 reconciles the supposed discord within the PAA raised by Security Service regarding retention of claims. Provision 9 states, in pertinent part:

> 9. **Preservation of Records**
>
> \* \* \* \*
>
> (b) Upon reasonable notice and during regular business hours, the Assuming Credit Union [Security Service] agrees to provide the Liquidating Agent, NCUA, and other federal, state or local law enforcement agencies ***unconditional access*** to said files, books, records, and supporting documents within the bounds of any applicable law or regulation, and to permit said documents to be copied at the NCUA's expense.
>
> (c) The Assuming Credit Union [Security Service] agrees to cooperate in any investigation of the activities of the Liquidating Credit Union [New Horizons] conducted by the Liquidating Agent, the NCUA, or their agents, or by other federal, state or local law enforcement agencies. The NCUA agrees to reimburse the Assuming Federal Credit Union for reasonable expenses associated with the Assuming Credit Union's responses to such requests.
>
> (d) The Assuming Credit Union [Security Service] agrees to assist the Liquidating Agent [NCUA] in documenting any bond claim the Liquidating Agent may file in connection with losses sustained by the Liquidating Credit Union [New

> Horizons]. This assistance will include, but is not limited to, research and document production of various files, records and documents of the Liquidating Credit Union that have been transferred to the Assuming Credit Union under the provisions of this Agreement . . .

ECF No. 917-1, p. 8 (emphasis added). Security Service is correct that Provision 8 assigns and transfers any and all evidence that could possibly be used to litigate claims arising from the New Horizons's losses. However, Provision 9 grants the NCUA "***unconditional access***" to such evidence. Further, federal, state, and local law enforcement agencies have the same unfettered access to all files, books, records, and supporting documents. Security Service also agreed "to cooperate in any investigation of the Liquidating Credit Union [New Horizons] . . . " ECF No. 917-1, p. 8. Security Service also agreed to assist the NCUA "in documenting any bond claim the Liquidating Agent [NCUA] may file in connection with losses sustained by the Liquidating Credit Union [New Horizons]." *Id*. These clauses manifest the NCUA's clear intention to retain claims associated with New Horizons's losses. If the NCUA intended to divest itself of all claims it could assert arising from New Horizons's losses, as Security Service suggests, there would be no need for it to: (1) retain unconditional access to all documents and records transferred to Security Service; (2) mandate Security Service's cooperation with any future investigation of New Horizons; and, (3) mandate Security Service's assistance in documenting any bond claim that it may file in connection with New Horizons's losses. The PAA is clear: (1) the NCUA retained all claims associated with New Horizons's losses; and, (2) if and when the NCUA chooses to pursue such claims, it will have unconditional access to all documents and records in Security Service's possession that are needed to support those claims. Therefore, Security

Service is not the proper party to bring claims that arise out of New Horizons's losses and Security Service's claims are DISMISSED WITH PREJUDICE.

**B. The *Pro Se* Defendants' Motion For Sanctions [ECF No. 920]**

The *Pro Se* Defendants argue that I should impose sanctions against Security Service pursuant to FED. R. CIV. P. 11 for filing frivolous claims. Specifically, the *Pro Se* defendants argue that Security Service:

> knew FAM and the *Pro Se* Defendants were not involved in the origination of the Loans and did not have personal knowledge of the purported Fraud Claims. Even after conducting extensive and exhaustive discovery the information in Plaintiff's possession from the very start confirmed that FAM and the Pro Se Defendants did not originate the Loans or have knowledge of the purported fraud claims.

ECF No. 920, p. 17, ¶ 1.

Under the FSA, FAM agreed to "*originate*, close, service and administer [construction loans for New Horizons] and provide a commitment for permanent financing to pay off the construction loan[s] upon maturity." ECF No. 917-2, p. 2, ¶ 3. Further, while I express no opinion as to the merits of this action, based on Security Service's filings and the parties' arguments in open court, there was enough evidence to at least *assert* a claim against the *Pro Se* defendants. Thus, I find the *Pro Se* Defendants' Motion For Sanctions [ECF No. 920] meritless, and the motion is DENIED.

## CONCLUSION

After careful consideration of the parties' filings and their arguments before me in open court, I find that Security Service is not the proper plaintiff in this action and lacks capacity to bring this suit. Because the defendants address this issue in their Motions for Summary Judgment [ECF Nos. 889, 914, 919, & 939], and because this is a

threshold issue, I need not address arguments presented in Orange Coast and Stewart Title's Motions to Dismiss [ECF Nos. 774 & 778] or Orange Coast and Lawyers Title's Motion for Judgment on the Pleadings [ECF No. 904]. Further, this Order is limited in scope to the issues of whether Security Service is the proper plaintiff in this action and whether imposition of sanctions against Security Service is proper. I express no opinion as to the validity or accuracy of any other arguments presented in the defendants' Motions for Summary Judgment [ECF Nos. 889, 914, 919, & 939] or Security Service's Motion for Partial Summary Judgment On The First And Twelfth Claims For Relief [ECF No. 913]. Accordingly, it is

ORDERED that Orange Coast Title Company of Southern California and Stewart Title of California's Motions To Dismiss [ECF Nos. 774 & 778] are **DENIED AS MOOT**. It is

FURTHER ORDERED that Orange Coast Title Company of Southern California and Lawyers Title's Motion For Judgment On The Pleadings [ECF No. 904] is **DENIED AS MOOT**. It is

FURTHER ORDERED that Orange Coast Title Company of Southern California, Lawyers Title Company, the FAM Defendants, and Stewart Title of California's Motions For Summary Judgment [ECF Nos. 889, 914, 919, & 939] are **GRANTED** to the extent they argue that Security Service Federal Credit Union is not the proper plaintiff in this action. Security Service Federal Credit Union's claims are **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that Security Service Federal Credit Union's Motion For Partial Summary Judgment On The First And Twelfth Claims For Relief [ECF No. 913]

is **DENIED AS MOOT**.  It is

FURTHER ORDERED that Security Service Federal Credit Union's Motion For Leave To File More Than A Single Motion For Summary Judgment [ECF No. 900] is **DENIED AS MOOT**.  It is

FURTHER ORDERED that the *Pro Se* Defendants' Motion For Sanctions And Attorney's Fees [ECF No. 920] is **DENIED**.

Dated:  March 20, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge